

FILED
DEC 18 2023
Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:23-CR-140 |
| v. | ) | |
| | ) | JUDGES CORKER/WYRICK |
| ERIC S. SMITH | ) | |

## INFORMATION

The United States Attorney charges the following:

## COUNT ONE
(Conspiracy to Commit Bribery and Honest Services Wire Fraud: 18 U.S.C. § 371)

### I. INTRODUCTION

1. The United States Department of Veteran's Affairs ("VA") is an executive agency of the United States of America. The primary mission of the VA is to care for service members who have served in the nation's military and to provide care for their families, caregivers, and survivors. For health care, the VA accomplishes this mission through the Veteran's Health Administration, which is the largest integrated health care network in the United States. The Veteran's Health Administration operates numerous health care facilities around the country and serves millions of enrolled Veterans each year at these facilities.

2. One of the VA's health care facilities is the James H. Quillen VA Medical Center in Mountain Home, Tennessee ("VAMC"), which is a full-service health care facility. The VAMC routinely offers a variety of medical services and products, to include services and products in the field of orthopedic medicine.

3. At all times material to this information, Monika D. Schorer (indicted separately in case number 2:23-CR-115), was an employee of the VA and worked at the VAMC where she

was an Acquisition and Utilization Specialist. As part of her training, Monika D. Schorer regularly completed government ethics trainings each year, to include on October 24, 2019, October 9, 2018, and October 10, 2017. Monika D. Schorer is the twin sister of Teresa D. Schorer (indicted separately in case number 2:23-CR-115).

4. At all times material to this indictment, Teresa D. Schorer was an employee of the VA and worked at the VAMC where she was a Supervisory Inventory Management Specialist. Prior to that position, Teresa D. Schorer held the position of Acquisition and Utilization Specialist. As part of her training, Teresa D. Schorer regularly completed government ethics trainings each year, to include trainings on January 12, 2016, January 11, 2017, January 30, 2018, January 7, 2019, and January 6, 2020.

5. At all times material to this indictment, defendant, ERIC S. SMITH, was a surgical sales representative and primarily worked as an independent contractor for Company A. At all times material to this indictment, Company A was based in Nashville, Tennessee and was an independent distributor for DePuy Synthes, a nationwide manufacturer of orthopedic products and supplies.

6. At all times material to this indictment, Unindicted Coconspirator 1 was a surgical sales representative and primarily worked as an independent contractor for Company A.

### A. Overview of Orthopedic Surgeries and DePuy Synthes Products

7. Surgeons who practice orthopedic medicine routinely perform a variety of surgeries, including joint replacement surgeries. During a joint replacement surgery, the surgeon removes an existing joint (such as a hip, knee, or shoulder) and replaces it with an artificial joint. The artificial joint is called an "implant" because it is implanted into the patient's body.

2

8. Several nationwide manufacturers produce orthopedic implants. One of the larger manufacturers is DePuy Synthes ("DePuy") located in Warsaw, Indiana. DePuy sells a variety of orthopedic implants as well as equipment, products, and supplies designed for use during implant surgeries. DePuy equipment and products used during surgeries are called "non-implants" because these items do not get implanted into a patient's body. Examples of non-implants include specialized blades, graters, reamers, drill bits, and pinning systems.

9. Some DePuy non-implant items are single-use items, meaning they can be used during only one surgery and are then discarded. Other DePuy non-implant items are multiple-use items, meaning they can be sterilized after surgery and used again during other surgeries. DePuy provides estimates of the average lifespan of its multiple-use, non-implant items.

10. Most orthopedic surgeons develop a brand loyalty for a particular implant manufacturer like DePuy, and they prefer to use implant and non-implant items from that same manufacturer when performing orthopedic surgeries.

11. DePuy markets and sells its products through a network of independent distributors like Company A. At all times relevant to this indictment, Company A was the DePuy independent distributor with the right to market and sell DePuy products in the territory that included the VAMC.

12. Company A distributed its products through a network of independent contractors like defendant and Unindicted Coconspirator 1. Company A used standard independent contractor agreements with its independent contractors that defined the parties' mutual obligations and included non-competition and non-solicitation provisions that prohibited the independent contractors from selling competing products or direct billing for DePuy products sold within their assigned territory.

3

## B. Overview of Government Purchase Cards

13. At all times relevant to this indictment, Monika D. Schorer and Teresa D. Schorer held government-issued credit cards that enabled them to make certain approved VAMC purchases when performing their day-to-day duties and responsibilities at the VAMC. Monika D. Schorer's credit card was issued by U.S. Bank, and the credit card account number ended with the numbers 7373 (Monika D. Schorer's government credit card is referred to in this indictment as "card 7373").

14. As government credit card holders, Monika D. Schorer and Teresa D. Schorer were required to undergo periodic trainings about authorized and non-authorized uses of their government credit cards. Monika D. Schorer completed this training on February 8, 2017, and February 4, 2019. Teresa D. Schorer completed this training on January 15, 2016, January 8, 2018, and January 16, 2020.

15. VAMC credit card holders could use their cards for authorized "micro purchases" which were defined as purchases for goods or services that did not exceed $10,000. For purchases that exceeded $10,000 payment took place through normal government acquisition processes.

16. At all times relevant to this indictment, Monika D. Schorer, aided and abetted by Teresa D. Schorer, ERIC S. SMITH, and unindicted coconspirator 1, used card 7373 to perpetrate a substantial fraud on the United States by authorizing payment for medical items sold by ERIC S. SMITH and Unindicted Coconspirator 1 that were priced differently from Depuy's standard pricing or that were unnecessary for the orthopedic surgeries from which bills were submitted.

4

Case 2:23-cr-00140-DCLC-CRW   Document 1   Filed 12/18/23   Page 4 of 15   PageID #: 4

### C. *Overview of Billing and Payment for Orthopedic Surgery Items at the VAMC*

17. At all times relevant to this indictment, the VAMC handled billing and payment for medical items used in orthopedic surgeries differently depending upon whether the items were implant items or non-implant items.

18. For implant items, the implant product typically included a set of bar-coded stickers. Following an orthopedic surgery, the surgical sales representative affixed one of these bar-coded stickers to a billing sheet that included the name of the patient, the date of the surgery, the doctor, the type of procedure, and the signature of a nurse. These completed billing sheets were then sent to the Prosthetics Service at the VAMC where purchase orders got issued and payment was processed.

19. For non-implant items, a similar billing sheet was used that contained the identity of the patient, date of surgery, name of the doctor, and type of procedure. A nurse typically completed the top portion of the form, executed the document, and then gave it to the surgical sales representative who completed the remainder of the form after the surgery. The surgical sales representative would use a bar code sticker for some non-implant items (if the product came with bar code stickers) or would hand write a description of what was used, the quantity used, and the price per item. The completed non-implant billing sheets were then sent to the Logistics Service at the VAMC where a purchase order was generated, and payment was processed.

20. Most payments for non-implant items were micro-purchases, meaning that an individual holding a government credit card would make payment using that credit card.

21. At all times relevant to this indictment, Monika D. Schorer was the VAMC employee who processed payments for non-implant items associated with orthopedic surgeries.

5

Prior to the period alleged in this indictment, Teresa D. Schorer had been the VAMC employee responsible for processing these payments.

22. For routine orthopedic surgeries, implant items normally would cost more than non-implant items used during any joint replacement surgery.

### D. Formation and Operation of Allied Surgical Supplies and Equipment, LLC

23. Prior to January 2018, defendant, ERIC S. SMITH, had acquired a substantial amount of unused non-implant inventory made up of DePuy and non-DePuy products. This inventory came from multiple sources, including left over inventory from prior surgical procedures and inventory obtained from hospital purges.

24. At a presently unknown date but not later than January 2023, defendant, ERIC S. SMITH, Unindicted Coconspirator 1, and Person A agreed to form Allied Surgical Supplies and Equipment, LLC for the purpose of selling defendant's acquired inventory to the VAMC. ERIC S. SMITH and Unindicted Coconspirator 1 needed to hide and conceal their involvement in selling ERIC S. SMITH's inventory directly to the VAMC from Company A, as selling competing non-implant items would violate the terms of their independent contractor agreements.

25. On January 17, 2018, ERIC S. SMITH, Unindicted Coconspirator 1, and Person A formed Allied Surgical Supplies and Equipment, LLC in the state of Virginia. In official filings, Person A was listed as owner of Allied Surgical Supplies and Equipment, LLC to hide and conceal ERIC S. SMITH's and Unindicted Coconspirator 1's involvement. Person A had no experience in the medical field. Allied Surgical Supplies and Equipment, LLC also had no internet presence, and its only real business revenue was from the VAMC. Allied Surgical

Supplies and Equipment, LLC had no normal operating expenses like wages, rent, utilities, or inventory purchases.

26. The agreement between ERIC S. SMITH, Unindicted Coconspirator 1, and Person A was that they would split the profits from Allied Surgical Supplies and Equipment, LLC, with ERIC S. SMITH and Unindicted Coconspirator 1 each receiving distributions of forty percent (40%) and Person A receiving distributions of twenty percent (20%).

27. Once Allied Surgical Supplies and Equipment, LLC became operational, ERIC S. SMITH and Unindicted Coconspirator 1 began selling non-implant items at the VAMC on behalf of Allied Surgical Supplies and Equipment, LLC. Instead of submitting non-implant billing sheets for Company A, ERIC S. SMITH and Unindicted Coconspirator 1 began to submit non-implant billing sheets for Allied Surgical Supplies and Equipment, LLC. Allied Surgical Supplies and Equipment, LLC's first paid invoice from the VAMC took place on February 3, 2018, and by the end of May 2018, Allied Surgical Supplies and Equipment, LLC had billed the VAMC over $350,000.

28. Each of the non-implant billing sheets for Allied Surgical Supplies and Equipment, LLC listed Person A as the contact. When the billing sheets were sent to Monika D. Schorer, she would contact Person A, provide Person A with a VAMC purchase order number and provide payment details for card 7373. Allied Surgical Supplies and Equipment, LLC would then process the payments and issue an invoice.

29. Allied Surgical Supplies and Equipment, LLC used a yahoo email account, and all email communications with Monika D. Schorer at the VAMC were made in interstate commerce because Yahoo's servers are located in the state of California.

### E. Overview of Four Corners Medical Supply and Equipment, LLC

30. After Allied Surgical Supplies and Equipment, LLC began successful operations, ERIC S. SMITH and Unindicted Coconspirator 1 determined that they could sell ERIC S. SMITH's accumulated inventory to the VAMC. To use Allied Surgical Supplies and Equipment, LLC, though, ERIC S. SMITH and Unindicted Coconspirator 1 had to pay Person A twenty percent (20%) of the profits. ERIC S. SMITH and Unindicted Coconspirator 1 consequently decided to form a new organization that they would own equally without Person A.

31. Prior to June 26, 2018, ERIC S. SMITH and Unindicted Coconspirator 1 met with Monika D. Schorer and Teresa D. Schorer and offered them an ownership interest in the contemplated new business to become effective when Monika D. Schorer and Teresa D. Schorer left the VAMC. In exchange, Monika D. Schorer and Teresa D. Schorer would provide whatever assistance was needed while they were still employees of the VAMC and, upon leaving the VAMC, would then use their status as female and disabled veterans to obtain new business from the VA.

32. On June 26, 2018, ERIC S. SMITH and Unindicted Coconspirator 1 formed Four Corners Medical Supply and Equipment, LLC ("Four Corners") in the state of Virginia. The new entity was equally owned by ERIC S. SMITH and Unindicted Coconspirator 1.

33. After its formation, Four Corners and Allied Surgical Supplies and Equipment, LLC began charging the VAMC for non-implant items associated with the same patient surgeries. Allied Surgical Supplies and Equipment, LLC and Four Corners would each submit non-implant billing sheets for the same surgeries but would charge for different items. Although the sheets listed different items, the total amounts charged to the VAMC for a particular surgery by each entity was roughly the same.

8

34. Four Corners' first billing to the VAMC took place on August 3, 2018, and continued through at least December 4, 2020.

35. Once a surgery was completed, ERIC S. SMITH or Unindicted Coconspirator 1 would complete a non-implant billing sheet. Those sheets would then be transferred to Monika D. Schorer for processing.

36. Once Monika D. Schorer received a non-implant billing sheet, she would generate an official VAMC purchase order number. She would then send an email from her VAMC government email account to Four Corners using the email address of fourcornersmed@yahoo.com. The email would advise Four Corners of the official purchase order number for the purchase, include an amount, and, initially, would instruct to contact Monika D. Schorer for her government credit card information. The email would also request an invoice once the payment was processed.

37. Upon receipt of this information, Unindicted Coconspirator 1 would process a credit card payment using card 7373 issued to Monika D. Schorer. These transactions took place through interstate wire transmissions because U.S. Bank's processing center was not located in the state of Tennessee. After the payment was processed, Unindicted Coconspirator 1 would then issue an invoice to the VAMC.

38. In billing the VAMC and processing the credit card payments, Four Corners often billed the VAMC for items that were priced differently from Depuy's normal pricing or were not necessary for the surgeries involved. Billing for unnecessary items included charges to the VAMC for replacement multi-use, non-implant items on surgeries when not necessary. Between January 19, 2018, and January 12, 2021, the average cost of non-implant items for

orthopedic surgeries at the VAMC increased from approximately $1,500 per surgery to approximately $6,800 per surgery.

## II.  CHARGE

39. Between a presently unknown date but not later than on or about June 26, 2018, and on or about January 12, 2021, within the Eastern District of Tennessee and elsewhere, the defendant, ERIC S. SMITH, unindicted coconspirator 1, Monika D. Schorer, and Teresa D. Schorer did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree with each other to commit certain offenses against the United States; that is, bribery in violation of 18 U.S.C. § 201(b)(2) and honest-services wire fraud in violation of 18 U.S.C. §§ 1343 and 1346.

## III.  PURPOSE AND GOAL OF THE CONSPIRACY

40. It was the purpose of the conspiracy that Monika D. Schorer and Teresa D. Schorer would, directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept personally things of value with the intent (a) to be influenced in the performance of any official act; (b) to be influenced to commit, aid in committing, collude in committing, and make opportunity for committing, fraud on the United States; and (c) be influenced in doing and omitting acts in violation of their official duty.

41. It was the goal of the conspiracy to commit a fraud upon the United States by using Four Corners to cause the VAMC to pay for differently priced items than what Depuy items normally cost and unnecessary non-implant items in connection with orthopedic surgeries performed at the VAMC.

10

## IV. MANNER AND MEANS

42. As part of the conspiracy, defendant, ERIC S. SMITH, Monika D. Schorer, Teresa D. Schorer, and Unindicted Coconspirator 1 formulated a plan and agreement which, among other things, included the manner and means of accomplishing the purposes and goals of the conspiracy as described in this section IV.

43. It was part of the conspiracy that ERIC S. SMITH and Unindicted Coconspirator 1 would offer to Monika D. Schorer and Teresa D. Schorer, and Monika D. Schorer and Teresa D. Schorer would agree to accept, a future ownership interest in Four Corners in exchange for assistance within the VAMC to ERIC S. SMITH and Unindicted Coconspirator 1 whenever and however needed.

44. It was part of the conspiracy that ERIC S. SMITH and Unindicted Coconspirator 1 would make cash bribe payments to Monika D. Schorer and Teresa D. Schorer in exchange for assistance within the VAMC to ERIC S. SMITH and Unindicted Coconspirator 1 whenever and however assistance was needed.

45. It was part of the conspiracy that the promised ownership in Four Corners and the cash bribe payments from ERIC S. SMITH and Unindicted Coconspirator 2 were to induce Monika D. Schorer and Teresa D. Schorer to commit, aid in committing, collude in committing, and make opportunity for committing, fraud on the United States.

46. It was part of the conspiracy that Teresa D. Schorer would take the necessary steps to set up Four Corners within the government's system for award management ("SAM"), a registration system required of government vendors.

47. It was part of the conspiracy that ERIC S. SMITH and Unindicted Coconspirator 1 would submit non-implant billing sheets to the VAMC on behalf of Allied Surgical Supplies

11

and Equipment, LLC and Four Corners that sought payment for differently priced items and items that were not necessary for the surgeries for which they were billed.

48. It was part of the conspiracy that ERIC S. SMITH and Unindicted Coconspirator 1 would limit the ability of other Company A independent contractors to submit non-implant billing sheets to the VAMC in connection with orthopedic surgeries at the VAMC for which other Company A independent contractors assisted.

49. It was part of the conspiracy that Teresa D. Schorer, as a VAMC supervisor, would approve VAMC forms titled Request, Turn In, and Receipt for Property or Services for some of the non-implant billing sheets submitted by Four Corners.

50. It was part of the conspiracy that Monika D. Schorer would generate official VAMC purchase orders for non-implant billing sheets submitted by Four Corners and provide her government card 7373 for payment and to assist in perpetrating fraud upon the United States.

51. It was part of the conspiracy that Unindicted Coconspirator 1 would cause charges to be made through interstate wire communications on card 7373, including charges for differently priced and unnecessary non-implant items.

52. It was part of the conspiracy that Four Corners would receive proceeds in the form of wire fund transfers from U.S. Bank to a Four Corners bank account following the processing of transactions to card 7373.

53. It was part of the conspiracy that one or more coconspirators would use wire communications that were in interstate commerce to accomplish the purposes and goals of the conspiracy.

12

Case 2:23-cr-00140-DCLC-CRW   Document 1   Filed 12/18/23   Page 12 of 15   PageID #: 12

54. It was part of the conspiracy that Monika D. Schorer and Teresa D. Schorer would provide information to ERIC S. SMITH and Unindicted Coconspirator 1 that was not otherwise available to other vendors at the VAMC.

55. It was part of the conspiracy that Monika D. Schorer and Teresa D. Schorer would take affirmative steps to hide and conceal the conspiracy from their supervisor and others at the VAMC, to include failing to disclose their receipt of bribe payments and their expected ownership interest on their Office of Government Ethics (OGE) Forms 450 for the year 2020.

56. It was part of the conspiracy that Monika D. Schorer and Teresa D. Schorer would take steps to avoid, evade, prevent, and obstruct an investigation into the billing practices of Allied Surgical Supplies and Equipment, LLC and thereby attempt to hide and conceal the true state of affairs taking place with Four Corners.

57. It was part of the conspiracy that one or more coconspirators would take steps and make statements to hide and conceal the existence of the conspiracy and steps taken in furtherance of the conspiracy.

## V. OVERT ACTS

58. To further the conspiracy and to accomplish its unlawful objects, one or more coconspirators did one or more of the overt acts described in this section.

59. On or about September 17, 2018, ERIC S. SMITH and Unindicted Coconspirator 1 cashed two checks each in the amount of $9,900 using a Four Corners BB&T checking account at the BB&T bank branch located at 203 Broyles Dr., Johnson City, Tennessee.

60. On or about September 17, 2018, at 12:56 p.m., ERIC S. SMITH and Teresa D. Schorer engaged in phone contact.

61. On or about September 17, 2018, ERIC S. SMITH delivered two envelopes that each contained $9,900 of cash to Teresa D. Schorer. One envelope was for Teresa D. Schorer, and one envelope was for Monika D. Schorer.

62. On or about October 9, 2018, ERIC S. SMITH and Unindicted Coconspirator 1 cashed two checks each in the amount of $7,000 using a Four Corners BB&T checking account at the BB&T bank branch located at 203 Broyles Dr., Johnson City, Tennessee.

63. On or about October 9, 2018, at 3:37 p.m., ERIC S. SMITH and Teresa D. Schorer engaged in phone contact.

64. On or about October 9, 2018, ERIC S. SMITH delivered two envelopes that each contained $7,000 of cash to Teresa D. Schorer. One envelope was for Teresa D. Schorer and one envelope was for Monika D. Schorer.

[18 U.S.C. § 371]

## CONSPIRACY FORFEITURE ALLEGATION

The allegation in Count One of this Information is hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) for a violation of 18 U.S.C. § 371.

Upon conviction of the offense in violation of 18 U.S.C. § 371, the defendant, ERIC S. SMITH, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal, constituting or derived directly or indirectly, from proceeds traceable to the commission of the offense, or a conspiracy to commit such an offense, including, but not limited to the following:

**Personal Property**

(i). Up to $25,369.07 seized from New Peoples Bank, account #60005287 held in the name of Allied Surgical Supplies & Equipment LLC; and

(ii). Up to $160,053.03 seized from First Bank and Trust Company, account #20032272, held in the name of Four Corners Medical Supply and Equipment LLC.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

By: _____
Mac D. Heavener, III
Assistant United States Attorney